SAMUEL D. FORBES and MARIA C. HARTMAN, plaintiffs in error, plaintiffs below, *vs.* THE STATE OF DELAWARE, defendant in error, defendant below.

*Writ of Error—Constitution; Construction of—Assault and Battery —Municipal Court—Jurisdiction—Judge.*

1.   The Municipal Court of the City of Wilmington, its Judge and its jurisdiction of assaults and batteries, and other offenses specifically enumerated in *Section 15, Article 6 of the late,* and in *Section 30, Article 4, of the present Constitution,* are continued and still exist under and by virtue of the provisions of the present Constitution.

2.   *Section 32, Article 4, of the present Constitution* does not require that the Judge of said Municipal Court who was lawfully holding his office when said Constitution took effect, should thereupon have been reappointed by the Governor, and confirmed by the Senate before he could lawfully continue in the exercise of the Court's aforesaid jurisdiction.

*(April 18, 1899.)*

NICHOLSON, Ch., and SPRUANCE and GRUBB, J. J., sitting.

*William F. Smalley, Jr.,* and *Anthony Higgins* for plaintiffs in error.

*Henry C. Conrad,* City Solicitor, and *Medford H. Cahoon,* Assistant City Solicitor, for defendant in error.

Supreme Court, No. 7, June Term, 1898.

WRIT OF ERROR to the Superior Court, for New Castle County. The assignments of error substantially appear in the opinion of the Court.

The judgment was entered and decision rendered in this case at an adjourned January Term of the Supreme Court, 1899—April 18, 1899.

GRUBB, J., delivering the opinion of the Court:

In the case before us the plaintiffs in error seek to have reversed a judgment of the Superior Court for New Castle County, affirming on *certiorari* a judgment of the Municipal Court for the City of Wilmington, rendered February 26, 1898, against the plaintiffs in error who were therein convicted of assault and battery and thereupon sentenced.

The said plaintiffs claim that said judgment of affirmance was erroneous, upon the following grounds: *First*, for that said Municipal Court was without jurisdiction of said offense because it was abolished on June 10, 1897, the time when the present Constitution took effect, by force of Section 9 of the Schedule, and of other provisions of said Constitution. *Second*, for that even if said Municipal Court was not abolished at said time, yet its judge was not thereafter legally constituted and qualified, and therefore could not lawfully exercise its jurisdiction because he was not thereafter reappointed and confirmed by the Senate as required by *Section 32, Article 4, of the present Constitution.*

The determination of the questions presented by these grounds of error necessitates the consideration of the late Constitution of 1831, and the present Constitution of 1897, and of the statutes enacted and existing in conformity therewith. By both *Section 1 of Article 6 of the late Constitution,* and *Section 1 of Article 4 of the present one,* it clearly appears that the judicial power was vested in two classes of courts, viz, those directly created and named by the Constitution itself, and those whose creation and continuance were left to the legislative wisdom and discretion. The former may therefore be conveniently described as Constitutional Courts and the latter as Statutory Courts.

By reference to *Section 15 of Article 6 of the late Constitution,* and to *Section 30, Article 4 of the present Constitution,* it will be found that jurisdiction of certain designated offenses, either with or without indictment by grand jury, or trial by petit jury, may be given by the General Assembly to, and exercised by inferior courts of statutory creation.

Under and by virtue of this constitutional provision contained in *Section 15, Article 6, of the late Constitution,* the statute of 1883, *Chap. 207, Vol. 17, Laws of Delaware,* and the acts amendatory thereof, created the said Municipal Court for the City of Wilmington, authorized the appointment of its Judge by the Governor and empowered it to try, among other matters, and upon information, and without indictment and trial by jury, the offense, now in question, of assault and battery, and other offenses then enumerated in said Section 15, and now still enumerated in *Section 30, of Article 4, of the present Constitution.*

That said Court was thus lawfully created, organized and empowered, and both it and its Judge, and its said jurisdiction legally existing on June 10, 1897, the time at which the present Constitution took effect, is not disputed but, as we understand, conceded by the counsel on both sides in the case now before us.

The real question now in controversy is whether or not the said Municipal Court, its Judge and its jurisdiction of assault and battery and the other offenses specifically enumerated then in *Section 15, Article 6 of the late,* and still in *Section 30, Article 4 of the present Constitution,* thus existing at that time, are continued and still exist under the present Constitution.

Said Court being an inferior Court of statutory creation, it is contended in behalf of the defendant in error that these are all continued and still exist under and by virtue of Section 18 of the Schedule, unless there is some express provision, or positive implication therefrom, to the contrary elsewhere in the Constitution. Said section is as follows: "Section 18. All the laws of this State existing at the time this Constitution shall take effect, and not inconsistent with it, shall remain in force, except so far as they shall be altered by future laws." Section 2 of the Schedule provides as follows: "Section 2. This Amended Constitution shall take effect on the tenth day of June in the year one thousand eight hundred and ninety-seven."

The manifest intent of said clause of Section 18 was generally

to continue in force and being, beyond question, all those matters whose existence or validity theretofore depended on any of such laws. For this purpose a like clause was incorporated in our first State Constitution of 1776, and in every succeeding Constitution. Therefore, as it plainly imports such a constitutional intent, it accordingly did continue in force and operation the then existing statutes establishing and empowering said Municipal Court, and consequently the existence and said jurisdiction thereof, except so far as inconsistent with or restricted by any express constitutional provision, or any clear and certain implication therefrom.

But the plaintiffs in error claim that the continuance of the existence and said jurisdiction of the Municipal Court for the City of Wilmington was inconsistent with the present Constitution, and especially because, as they urge, it was abolished by force of the first clause of Section 9 of the Schedule thereof. The language of said clause is as follows: "All the courts of justice now existing shall continue with their present jurisdiction, and the Chancellor and judges shall continue in office until the tenth day of June in the year one thousand eight hundred and ninety-seven; upon which day the said courts shall be abolished, and the offices of the said Chancellor and judges shall expire."

Since said Municipal Court is not expressly named, nor like inferior courts of statutory creation as a class expressly referred to in said first clause, reference must be had to the remaining provisions of said Section 9, and also to the provisions of other sections of the Schedule of which it is a part, in order to determine whether or not the said clause was really intended by its framers to apply to and operate upon said Municipal Court, or any statutory or other court except those expressly and particularly named in the remaining clauses of Section 9.

Examination of said remaining clauses, as well as of the provisions of Section 10 and Section 18 of the Schedule, in connection with said first clause of Section 9, seems to warrant the conclusion that the said abolishing clause, notwithstanding its general lan-

guage—" All the courts of justice now existing"—, was intended to apply only and exclusively to the courts expressly and specifically mentioned by name in said Section 9.   For all three of said sections 9, 10 and 18, being alike Schedule provisions, must be construed together with a view to giving due effect to each and a consistent and harmonious operation to all.   As the remaining clauses of Section 9 subsequent to said first clause thereof, expressly make particular provision for the transfer of all pending proceedings, etc., and of the records, etc., of the several courts respectively and specifically named therein, and make no provision whatsoever for the transfer of the pending proceedings, etc., and the records, jurisdiction, etc., of said Municipal, or any other statutory inferior Court, or of the Registers' Courts or Justices of the Peace, the reasonable inference therefrom obviously seems to be that said first clause was not intended to apply to, or embrace within its operation any such statutory court, or any Register's Court, or Justices of the Peace.   In view of such careful forethought and particular provision respecting the courts specifically named in said clause, it is improbable, and therefore unreasonable, if not absurd, to conclude that the framers of said clause could have intended thereby to abolish any such useful and needful court without making adequate provision for such transfer.

Further evidence that the framers of said abolishing clause did not intend that it should apply to any such statutory court as said Municipal Court, or to the Registers' Courts or Justices of the Peace, is found in the significant fact that they made adequate provisions to the contrary, and for their continuance, respectively, in said Section 18 of the Schedule, as already shown, and in Section 10 thereof which is as follows:   " Unless otherwise provided, the Registers' Courts and the jurisdiction of Justices of the Peace shall not be affected by this amended Constitution."

This view that the Convention which framed, adopted and promulgated the present Constitution, intended to continue in existence and operation, and not to abolish any such already lawfully

existing inferior court as the said Municipal Court, is confirmed by the express terms of the Judiciary Article itself, as contained in Section 30 of Article 4 thereof as follows : "Section 30. The General Assembly may by law give to any inferior courts by it established or to be established, or to one or more Justices of the Peace, jurisdiction of the criminal matters following, that is to say : assaults and batteries, keeping without license a public house of entertainment, tavern, inn, ale house, ordinary or victualing house, retailing or selling without license, or on Sunday, or to minors, wine, rum, brandy, gin, whiskey, or spirituous or mixed liquors, contrary to law, carrying concealed a deadly weapon, disturbing meetings held for the purpose of religious worship, nuisance, and such other misdemeanors as the General Assembly may from time to time, with the concurrence of two-thirds of all the members elected to each House, prescribe.

"The General Assembly may by law regulate this jurisdiction, and provide that the proceedings shall be with or without indictment by grand jury, or trial by petit jury, and may grant or deny the privilege of appeal to the Court of General Sessions; provided, however, that there shall be an appeal to the Court of General Sessions in all cases in which the sentence shall be imprisonment exceeding one month, or a fine exceeding one hundred dollars."

The words "established or to be established" in their natural and ordinary meaning reasonably imply that the framers of this Constitution contemplated the continued existence of some inferior court or courts—such as said Municipal Court—lawfully established by the General Assembly before, and legally existing at the time the present Constitution was to become operative, as well as the establishment by it of any such courts thereafter. And, accordingly, that adequate provision was subsequently made by them in Section 18 of the Schedule, for the accomplishment of this contemplated object, has already been shown. The said implication is strengthened by the fact that only the words "to be established" were employed in the corresponding *Section 15 of Article 6, of the*

*late Constitution,* whilst the word "established" was added by *Section 30, of Article 4, of the present one,* as well as other offenses enumerated therein, together with power to the Legislature to prescribe still further misdemeanors, in addition to those enumerated in said Section 15, Article 6. For by thus adding the word "established" it thereby became possible for the General Assembly thereafter to give to any such continued pre-existing statutory courts additional jurisdiction of offenses not enumerated in, and conferred upon it by virtue of said *Section 15, Article 6, of the late Constitution.*

We fail to find in *Section 1 of Article 4, of the present Constitution,* when carefully considered in connection with the other provisions of said instrument, any expression or implication inconsistent and irreconcilable with our foregoing view of a manifest and prevailing constitutional intent to continue the existence and said jurisdiction of any such inferior courts lawfully established and legally existing as aforesaid.

This Section is as follows: "Section 1. The judicial power of this State shall be vested in a Supreme Court, a Superior Court, a Court of Chancery, an Orphans' Court, a Court of Oyer and Terminer, a Court of General Sessions, a Register's Court, Justices of the Peace and such other Courts as the General Assembly, with the concurrence of two-thirds of all the members elected to each House, shall from time to time by law establish."

Ordinarily the word "shall" in the clause "shall from time to time by law establish," might be deemed, if said section were considered alone, to import a future operation only, and to imply that judicial power could be vested only in statutory courts to be established subsequently to the time when the present Constitution became operative. Yet when construed in connection with other provisions of the Constitution and Schedule, such a restricted operation cannot reasonably be given to it so far as concerns the inferior courts and their jurisdiction contemplated by the provisions of the subsequent Section 30 of said Article 4.

Clearly the framers of said clause of Section 1 of Article 4 did not intend to employ it in any such restricted sense, nor design that thereby any such inferior courts and their aforesaid jurisdiction lawfully existing at the time the Constitution took effect should be abolished, or they would, as it is reasonable to presume, have made provision in the Schedule, or elsewhere in the Constitution, for the transfer of their pending proceedings, records, jurisdiction, etc., to some other appropriate judicial tribunal, as they did, as heretofore shown, in respect to the courts which they really designed to abolish. For it is obviously more reasonable to construe sections 1 and 30 of said Article 4, viewed in the light of Section 18 and other provisions of the Schedule, so as to regard Section 30 as a supplementary proviso to Section 1 to the extent of recognizing the continued existence of inferior statutory courts lawfully established before, and legally existing at the time the present Constitution took effect, and of also authorizing their exercise of such jurisdiction as by law then had been, or thereafter shall have been, given to them by the General Assembly, of the offenses enumerated in, or prescribed by the Legislature in accordance with said Section 30.

Thus construed, said sections 1 and 30 may be held to mean that such jurisdiction may be exercised by inferior statutory courts lawfully established and existing either at or after the time said Constitution took effect. Such a construction will harmonize Section 1 and Section 30 of Article 4, and make both accord with sections 9, 10, 18 and 16 of the Schedule—and also with Section 32 of said Article 4 by properly giving the last named Section a prospective application solely, and confining its operation to inferior statutory courts established after the present Constitution took effect; thus leaving any necessary future appointment of a Judge of the said Municipal Court for the City of Wilmington to such constitutional or statutory provision as may be applicable and adequate for the purpose.

Accordingly, it is considered by this Court that the said

Municipal Court for the City of Wilmington, its Judge and its jurisdiction of the assault and battery in question here, were continued and existing under and by virtue of the provisions of the present Constitution and Schedule, at the time its said judgment against the plaintiffs in error was rendered; and it is therefore now considered and adjudged that the aforesaid judgment of the said Superior Court be affirmed, with costs, etc.